[No. 30643. Department Two. November 30, 1948.]

E. E. PAULSON et al., Respondents, v. FLORENCE E. CUDDY, Appellant.[1]

*Boardman Noland,* for appellant.

[1] Reported in 199 P. (2d) 920.

SIMPSON, J.—Plaintiffs brought this action to rescind a contract for the sale of personal property and to recover damages. The complaint contained the following allegations: Prior to September 30, 1944, the defendant operated the Great Falls hotel in the city of Spokane. Plaintiffs entered into a contract to purchase from the defendant the furnishings then in the hotel, on September 30, 1944. Prior to entering into the contract, the defendant informed plaintiffs that she received certain periodic rentals for the rooms in the hotel; further, that the plaintiffs would not have entered into the contract but for the representations concerning the income. The fact was, however, that the office of price administration ceiling price rental was at least $268.65 per month less than the defendant represented. Defendant stated that the premises could be operated as a first-class hotel with the furnishings therein, which statement was false and known to be false by the defendant, but not by plaintiffs. In January, 1945, plaintiffs gave notice of rescission to the defendant.

Plaintiffs prayed for a decree rescinding the contract and restoring the payments already made by the plaintiffs on the purchase price, and a reasonable compensation for operating the hotel. In the alternative, plaintiffs asked for damages in the sum of twenty-nine hundred dollars.

The defendant's answer denied all the material allegations of the complaint, except that she had entered into a contract with the plaintiffs for the sale of the personal property in the hotel. As an affirmative defense, she alleged that plaintiffs had full information concerning the ceiling prices and the fact that defendant was making certain blanket charges, which included the ceiling price rental and charges for extra services; further, that these charges were submitted to the OPA, and she honestly believed they had been approved by that agency. As a second affirmative defense, she contended that plaintiffs had not offered to surrender possession of the goods, but had retained the benefits and the use of them.

In a cross-complaint, defendant alleged that plaintiffs failed to make the payments due on the contract of sale

following the notice of rescission in January, and had also failed to pay taxes and insurance premiums due thereon; that the defendant served a notice of delinquency and, after five days, a notice of forfeiture on plaintiffs. Defendant then asked for a decree forfeiting plaintiffs' rights under the contract and declaring defendant to be the owner of the property; further, that defendant be allowed compensation for the use of the property from January 10, 1945, in the amount of five hundred dollars per month.

Plaintiffs' answer to the cross-complaint put in issue the allegations therein contained. Thereafter, plaintiffs filed a supplemental complaint, approximately eight months after the original had been filed, alleging that the defendant had denied the right of rescission and therefore, had made it necessary for the plaintiffs to operate the business for the protection of both parties. They then asked the court to allow them five hundred dollars per month as the reasonable value of their work and labor in the operation of the hotel.

The case was heard September 4, 1945, and the trial court rendered a memorandum decision on December 5, 1945, stating that a decree would be entered requiring defendant to pay all moneys received from plaintiffs, and all expenses incurred by them in the operation of the hotel, while the plaintiffs would be required to return the property delivered under the contract and the income from the property, less an allowance as compensation for management. Thereafter, defendant filed a motion asking for a further hearing. This motion was supported by several affidavits which tend to show that the defendant's practices were legal; further, that plaintiff Paulson had knowledge of the ceiling price and extra charge practice before he entered into the contract of sale, and that he continued the practice after he knew of the true ceiling price.

June 22, 1946, the court filed a supplemental memorandum, stating that plaintiffs would be allowed the sum of one hundred dollars per month for management of the property. July 5, 1946, defendant petitioned for a fuller accounting, claiming that the goods in dispute were sold,

and that Paulson was in receipt of part of the proceeds of that sale. Various other motions were made which are not necessary to itemize.

Based upon the evidence received at the trial, the court made its findings of fact and conclusions of law, and entered a decree rescinding the contract and deciding that the appellant should have judgment against the respondents in the sum of $567.94, plus interest. The findings of fact recited the making of the contract between appellant and respondents; further, that respondents had paid two installment payments of one hundred fifty dollars each. Then in paragraph No. 5 the court found:

"That the defendant misrepresented to the plaintiffs the amount of the monthly income received from the Great Falls Hotel and the O.P.A. ceiling price which was the legal and lawful maximum rent receivable upon the above described premises, and represented that the sum of $1208.65 was the rental received per month from said hotel and that said sum was a lawful and legal rent receivable under the O.P.A. regulations."

In paragraph No. 6 the court found:

"That the plaintiffs relied upon the representation of the defendant as to the monthly income received from the above described hotel and upon the defendant's representation that said income was based upon the legal maximum rate as established by the O.P.A., and said representations were false."

Based upon these findings and the accounting which was attached to and made a part of the findings, the court concluded that respondents were entitled to a refund of the down payment and the two one-hundred-fifty-dollar payments, together with all sums of money necessarily expended by them in order to conduct the business of the hotel; further, that respondents were entitled to one hundred dollars a month for services rendered in the operation of the hotel in the capacity of trustees, or a total of twenty-one hundred dollars; and that the appellant was entitled to the net profits received from the operation of the hotel during the twenty-one months' period when it was in the possession of respondents.

After denial of her motion for new trial, defendant appeals to this court. The assignments of error were sufficient to challenge the findings, conclusions, and decree of the trial court.

The facts may be summarized as follows: September 30, 1944, appellant and respondents entered into a written conditional sales contract. By the terms of this contract, appellant agreed to sell, and respondents to purchase, the personal property in the Great Falls hotel in the city of Spokane. The purchase price was fifty-five hundred dollars, of which twenty-seven hundred fifty dollars was paid at the time the contract was signed. It was also agreed that the balance of twenty-seven hundred fifty dollars should be paid as follows: one hundred fifty dollars November 10, 1944, and the same amount on the tenth day of each succeeding month until the balance was paid. The personal property sold was described as hotel furniture, fixtures, rugs, linens, bedding, etc., as described in a certain inventory which was attached to the contract and by reference made a part of it. Respondents agreed to pay all taxes which should become due on the property. It was agreed that, should default be made in the payment of any of the amounts, principal or interest, or failure be made to perform any of the covenants or conditions of the contract, the vendor was to be empowered to take possession of the personal property, and that all sums paid by the vendees should be retained by appellant as rent for the use of the property. Two monthly payments were made by respondents.

Respondent E. E. Paulson testified that prior to September 30, 1944, he had conferences and conversations with appellant, at which time she told him that she knew the laws and had been down to the OPA on numerous occasions. She then gave him some papers which showed the income from the rent of the hotel rooms. The papers were introduced in evidence and were known as plaintiffs' exhibit No. 2. This exhibit indicated that appellant was receiving $1,208.65 for a certain period of time, which was not indicated on the exhibit. However, the exhibit did show

the amount that appellant had charged for the rooms, this charge being based upon weekly occupancy. Plaintiffs' exhibit No. 3 showed the maximum rent for rooms rented or offered for rent. The charges were based upon occupancy by one, two, or three persons per day, per week, and per month. At the bottom of the last page of the schedule, there was a statement that "these prices do not include gas or maid service in H-K rooms."

Respondent testified that appellant had left this schedule upon her desk in the office. He stated that appellant had told him that a blanket charge could be made for electricity, for heat, and other services. He complained also that there was not sufficient linen or blankets to operate the hotel. He further stated there was a shortage of one hundred sheets, one hundred pillows, and two dozen towels. Mr. Paulson testified further that he was advised by officials of the OPA that he had overcharged his tenants, and that a refund would have to be made; that he made the refund, and it amounted to over three hundred dollars.

The rates in exhibit No. 3 were substantially lower than the rates quoted in exhibit No. 2. According to respondent, the difference in rates was explained by appellant as being due to the failure of exhibit No. 3 to include charges for extra services which she had added to the rates as a blanket coverage. Respondent further testified that about the first of December, he was told by someone in the OPA office that he could not charge extra for any services. He then demanded of appellant that she secure authorization for the charges listed in exhibit No. 2. Appellant then stated that respondent could charge either a blanket rate or an itemized charge.

January 2, 1945, a letter was written by the Spokane office of the OPA directing that refunds be made to tenants of certain rooms in the Great Falls hotel for all sums over the rates shown in exhibit No. 3, and threatening a suit for treble damages if this was not done. Immediately thereafter, a notice of rescission dated December 30, 1944, was

served upon appellant, and the complaint was filed the same day.

Mr. Bain, the agent who handled the sale between the parties, offered evidence to show that appellant had explained that her system of making charges was not in accord with the strict rules of the OPA.

A Mr. Cunningham, tenant in the hotel, testified that he had heard the appellant mention the matter of extra charges during the negotiations leading up to the sale.

Respondent Paulson, called as an adverse witness, stated that he continued to charge each tenant of a housekeeping room for the amount of gas consumed.

It will be noted that, during the time the parties to this action were operating the hotel, rents were fixed by the office of price administration. They were based upon the rents charged by the owners of property during the thirty-day period prior to March 1, 1942. 50 U.S.C.A. (App.), § 902 (b).

Joseph E. Hurley, district enforcement attorney and acting district rent attorney for the OPA, testified relative to the charges for rooms at the hotel. He identified defendant's exhibit No. 16 as a schedule of maximum legal rents filed with his office January 14, 1943. The document contained a statement of daily, weekly, and monthly rates which were charged for the rooms in the Great Falls hotel during the thirty-day period ending March 1, 1942. The witness stated:

"A. And she has inserted on there in the top part, in addition to this she has: 'Twelve Dollars a month rate on March no gas, no maid service, for housekeeping rooms.'"

October 20, 1942, appellant filed with the OPA her petition for adjustment of rents, in which she asked a raise in rent charges. Her reasons were as follows:

"Installation of gas ranges, kitchen cabinets, congoleum rugs, carpets, beds, dressers, mattresses, chairs, tables, linens, curtains, bedding, besides rebuilding a dangerous stairway, and covering floors of lobby, stairway, and baths with inlaid, at a cost of $5000.00, besides increasing cost of fuel, help and all operating expense makes it necessary for

me to rent my rooms at the price I am petitioning for. There is also increased use of facilities now, over last March, when I had only pensioners and workingmen who were gone all day. Now I have women and children who use more electrical appliances and hot water, besides being in their rooms twenty-four hours a day. Also § 3 did not cover operating cost in March."

Mr. Hurley testified:

"Well, the OPA gave her a rate for room 9, which is the first of that list, of a dollar a day single occupancy; one dollar and twenty-five cents double; one dollar fifty for triple occupancy. They allowed her a weekly rate of five dollars per week single; six fifty double; seven fifty triple. Monthly rate of twenty dollars per month single; twenty-five double; thirty triple, on that room. And right down to 24 they allowed exactly the same rates, from 9 to 24. Q. From 9 to 24? A. Then on 24 and 25, that was a combination room, two rooms together. They allowed her two dollars a day single; three dollars double; three fifty for triple occupancy. They gave her a weekly rate of eight dollars single; ten dollars double; eleven dollars triple. Monthly, thirty dollars single; forty dollars double; forty-five dollars triple. Then all the rest of the rooms— Q. Beginning with number what? A. Beginning with room 27 to and including 51, all have the same rates as room 9 which I detailed. Q. That is five dollars a week? A. Except four and 5. Four and five are dollar and a quarter a day single; dollar fifty double; two dollars triple; weekly is five dollars single; six fifty double; seven fifty triple. Monthly eighteen dollars single; twenty-three double, and twenty-six for triple occupancy. . . .

"A. She [appellant] never made a complaint to our office but after the entering of this order we had numerous people come in asking whether or not the gas charge which she was making was a legitimate charge. Q. And what did you tell Mrs. Cuddy, if anything, about that? A. I told her on one occasion that—I asked her how could she be charging for gas in March when she told us from one petition she installed the gas ranges since, but I assumed that that could well be just a mistake, so I explained to her that since the order was silent on the matter of gas, since there is nothing in the record on it, that if actually during the thirty days commencing on March 1st she had each tenant pay the gas, or a flat rate on gas, that it was doubtful now whether or not we could prohibit her from doing it."

It is our conclusion that respondents did not prove that the chargeable rents, as shown by plaintiffs' exhibit No. 2, were illegal. True, they were in excess of those shown on defendant's exhibits Nos. 16 and 19. However, additional charges were based upon additional services given to those who rented the rooms. Those charges were not shown to have been contrary to the dictates of the OPA. This is clearly apparent from Mr. Hurley's testimony.

We hold that respondents failed to prove by clear, cogent, and convincing evidence that appellant was guilty of fraud in inducing them to purchase her property. It follows that the judgment will be reversed, and that the prayer of appellant in her cross-complaint must be granted. It is so ordered.

MALLERY, C. J., ROBINSON, and SCHWELLENBACH, JJ., concur.

HILL, J., dissents.